## Rossi v. Commonwealth

*J. J. McCluskey* and *John McAfee*, for plaintiffs.
*E. Charles Coslett*, for defendant.

PINOLA, P. J., January 7, 1966.—On June 10, 1963, in connection with the alteration of Route 29, the De-

partment of Highways condemned a parcel of land 300 feet in front along Route 29 and 100 feet deep along Industrial Park Road in Sugar Loaf Township. This was a part of a larger tract owned in fee by plaintiffs. The land was improved with a two and one-half story building, the upper floors of which were occupied as a dwelling, and the first floor was occupied as a bar and restaurant.

The area of the original plot was 114,200 square feet, and after the taking, the area was 89,050 square feet, so that the amount taken was 25,150 square feet, about five-eighths of an acre.

The viewers awarded plaintiffs $22,500, with detention damages at six percent from July 10, 1963. The Commonwealth took an appeal, and, after trial, the jury found for plaintiffs in the sum of $51,750.

The Commonwealth filed eight reasons for a new trial, but it abandoned two of them, no. 4 and no. 7.

Counsel for plaintiffs argue that in passing upon the question of whether a new trial should be allowed, the testimony is to be read, especially where it is conflicting, in the light most favorable to the verdict winner, citing Geyer v. Thomas, 364 Pa. 242. In that case, the motion under consideration was for judgment n.o.v. When the motion is for a new trial because the verdict is against the weight of the evidence, the court must review and consider the entire record: Bailey v. Gibbs, 414 Pa. 238; Denman v. Rhodes, 206 Pa. Superior Ct. 457.

With that in mind, we will take up the remaining reasons.

No. 1 is that "The verdict was against the evidence."

There is no merit to this reason. It forms the basis for a new trial only when there is no competent, credible evidence legally sufficient to sustain the verdict. Moreover, this ground is not applicable where the evidence is conflicting, although legally sufficient. It is

axiomatic that a verdict justified or supported by the evidence will not be disturbed: Landis, Admrx., v. Conestoga Transportation Company, 349 Pa. 97.

No. 3 reads: "The verdict was against the law".

In order to secure a new trial on this ground, defendant must show that the jury disregarded the instructions of the court. Counsel has failed to point out wherein the jury did so. In our opinion, the verdict is consonant with the charge.

We will consider no. 2 and no. 8 together. They read as follows:

"2. The verdict was against the weight of the evidence.

"8. Under the evidence and the law the verdict was excessive".

One of the most strongly entrenched principles in the law is that a new trial will not be granted on the ground that the verdict is against the weight of the evidence, where the evidence is conflicting and was sufficient to enable the jury to find for either party, for to grant a new trial in such a situation would be to usurp the functions of the jury. Nevertheless, it is the duty of the court to set aside a verdict where the testimony is oral and contradictory, if substantial justice requires it: 6A Standard Pa. Prac. §78, p. 111.

Stated in other words, where the evidence in a case is conflicting, and the determination of the issues is dependent upon a determination of the credibility of witnesses, a new trial will not be granted, for where the case rests on oral testimony, the credibility of the witnesses, even when uncontradicted, is for the jury, and the verdict should not be set aside unless it is manifestly wrong, perverse, unjust and shocking to the conscience of the court: Id., section 79.

Going to the evidence, we find that Louis Rossi, one of the plaintiffs, testified that the before value was $65,000, the after value $5,000, with resultant dam-

ages of $60,000. Their expert, Arthur Deisroth, testified that the before value was $38,000, the after value $3,500, and the damages $34,500.

For the Commonwealth, Matthew Leib testified that the before value was $22,445, the after value $4,425, and the resultant damages $18,200.

Another witness for defendant, Michael J. Gosek, testified that the before value was $21,000, the after value $4,200, and the damages $16,800.

The verdict was for $51,750.

In Buda Condemnation, 51 Luz. 239, 242, we declared that:

"To award a new trial . . . it must appear from the record that the 'jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail': Jones et vir v. Williams, et al., 358 Pa. 559; Carroll v. Pittsburgh, 368 Pa. 436; or that the verdict was 'perverse or capricious' or 'plainly against the weight of the evidence': Elia v. Olszewski, 368 Pa. 578".

In Lenik Condemnation Case, 404 Pa. 257, there was a similar situation. One of the plaintiffs testified that the damages amounted to between $14,000 and $15,000. Their appraisers, however, testified they were only $11,500. The jury awarded $13,500. This sum was $2,000 higher than the figures of the expert, and either $500 or $1,500 below plaintiff who testified. While a new trial was granted, it was not because of the disparity of values.

In Frontage, Inc. v. Allegheny County, 408 Pa. 165, the verdict was $65,840.66, and plaintiff's two experts said the value was $50,000 and $58,000. Thus, the excess was either $15,840 or $7,840. Justice Eagen said:

"The verdict even exceeds substantially the value placed on the land by the plaintiff's own experts".

Here, while the verdict is $17,250 higher than the

value fixed by plaintiffs' expert witness, it is $8,250 less than the figure of Louis Rossi.

Since the evidence of Rossi is competent legal evidence, the jury had a perfect right to consider it.

In Chiorazzi v. Commonwealth, 411 Pa. 397, the court declared, page 400:

"The award of the board of view is an important circumstance or factor to be considered when a new trial is requested either for inadequacy or excessiveness of the jury's verdict, but it is not controlling".

In Vaughan v. Commonwealth, 407 Pa. 189, 191-92, Justice Cohen declared:

"The jury verdict of $25,000 is nearly 36 times greater than the $700 award of the viewers. We have often said that the disparity between the award of a board of view and the verdict of a jury is an important circumstance to be considered where a new trial is urged upon the ground that the verdict of the jury was either inadequate or excessive. Schuster v. Pa. Turnpike Comm., 395 Pa. 441, 149 A. 2d 447 (1959) ; Mazur v. Commonwealth, 390 Pa. 148, 134 A. 2d 669 (1957). This is not the usual situation where the discrepancy between the two figures is *twice as much or even six times as much.* Here, the difference is many times the normal discrepancy. Such disparity without explanation is unconscionable and reflects upon the efficacy of the judicial process". (Italics supplied.)

In a later case, Frontage, Inc. v. Allegheny County, supra, the court held that in determining whether a verdict is excessive, the fact that it is greatly in excess of the amount awarded by the board of viewers, although not controlling, is an important factor for consideration. There, the viewers awarded $13,150 and the jury $65,840. The owner's experts had given their opinions of the damages as $50,000 and $58,000. A new trial was granted. There, the verdict was five times the amount of the viewers' award.

Here, the verdict is a little over two and one-fourth times the award of the viewers. We feel that the verdict is not against the weight of the evidence and that it is not excessive.

Reasons no. 5 and no. 6 deal with crossexamination of defendant's witness, Matthew Leib. They read as follows:

"5. The learned trial judge erred in allowing crossexamination of defendant's expert Matthew Leib concerning an alleged option to purchase given by plaintiffs with respect to other lands of plaintiffs.

"6. The learned trial judge erred in allowing plaintiffs' counsel to propound a question to defendant's expert Leib incorporating the consideration involved in an alleged option to purchase, after the said witness had already indicated that he was not familiar with any such option and did not consider it in his appraisal, the effect of said question being to expose the jury to evidence which was inadmissible in plaintiffs' case in chief, to the great harm and prejudice of the defendant".

In the course of the testimony of plaintiff, Peter Rossi, the court sustained an objection to a question propounded by plaintiffs' counsel to him as to whether he was aware of an option given by the Rossis to the American Oil Company for a one-acre lot across the street from the property in question.

On crossexamination (n.t. 74), Mr. Leib, defendant's witness, was asked if he knew of the option given to the American Oil Company for .96 of an acre owned by plaintiffs directly across the street from the subject property. He was also asked whether or not he became aware of this option in the trial of another case.

On redirect examination by Mr. Coslett, he also stated that the option was never exercised and that there was no American Oil station across the street.

Under the old law, when he said that he was not

aware of it, knew nothing about its details and had not considered it, the question put him on crossexamination could not include the price of $27,000: Girard Trust Co., Trustee, v. Philadelphia, 248 Pa. 179, 183.

Now, under the Eminent Domain Code of June 22, 1964, P. L. 84, sec. 705(2)(i), 26 PS §705(2)·(i), a qualified expert may testify on direct or crossexamination as to "the price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation".

It is the purpose of this clause to allow evidence on both direct and crossexamination of valuation witnesses regardless of whether they "relied on" or "based their opinion on" any sale or any contract to sell. Such evidence, in our opinion, is admissible as to market value as for credibility purposes.

Defendant's counsel contends that an option has no probative value as to the market value of the property. With this, we disagree.

At the outset, we point out that the act refers to a "contract to sell," not a "contract of sale". There is no doubt that an option is a contract.

In Restatement, Contracts, §24, it is stated:

"An offer is a promise which is in its terms conditional upon an act, forbearance or return promise being given in exchange for the promise or its performance. An offer is also a contract, commonly called an option, if the requisites of a formal or an informal contract exist, or if the rule stated in §47 is applicable".

Although an option is a unilateral agreement, it has been held by many courts to be a contract: Ervin v. Colby, 119 Me. 118, 109 Atl. 388, 389; Strong v. Moore, 105 Oregon 12, 207 Pac. 179; Tufts v. Mann, 116 Cal. App. 170, 2 P. 2d 500; Fraser v. Farmers' Co-Op, 167 Minn. 369, 209 N. W. 33.

In Barton v. Thaw, 246 Pa. 348, the court said (page 357):

"It [an option] is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time".

In that case the court made further reference to the option as an agreement and referred to Barnes v. Rea, 219 Pa. 279, which declared that an option is a unilateral agreement.

In the Barnes case, the court said (page 285) :

"An option is a unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee. The court below was, therefore, in error in holding that the covenants in the agreement under consideration were mutual and dependent from the date of the execution of the agreement".

In Boyer v. Nesbitt, 227 Pa. 398 (from this county), the court said (page 405) :

"An option is a unilateral agreement binding upon the party who executes it from the date of its execution and becomes a contract inter partes when exercised according to its terms. . . . There is no substantial merit in the contention that the *contract* lacks mutuality of parties and is without consideration". (Italics supplied.)

Our situation is clearly ruled by Westinghouse Air Brake Company v. Pittsburgh, 316 Pa. 372. There, the court said, page 376:

"In New York it has been held that offers to sell in the ordinary course of business may be the basis for an opinion of market value: Harrison v. Glover, 72 N. Y. 451. Option prices, fixed prior to the improvement or the occasion for taking testimony, have been held competent for disputing an opinion as to value: Appeal of Penna. Co. for Ins. on L. & G. Annuities, supra, at 76; Rea v. Pgh. Ry. Co., 229 Pa. 106, 119".

316

In a later case, Durika v. Derry Township School District, 415 Pa. 480, 484, Chief Justice Bell declared:

"The court permitted plaintiff to be questioned on cross-examination and over the objection of his counsel as to the price at which he had been willing to sell his property three years before condemnation. An offer by an owner to sell his property at a specified price, as well as the purchase price of the land, is admissible if not too remote in time. Under the facts in this case there was no error in permitting this cross-examination".

We are satisfied that the questions propounded to witness Leib were proper.

For the reasons expressed above, we enter the following

ORDER

Defendant's motion for new trial is denied.

Schiffman, J., did not participate.